JOHN ALEXANDER GOODEN, CORNELIUS BUTLER, JR., DOING BUSINESS AS C. BUTLER, JR., LUMBER COMPANY, WILLIAM G. McDANIEL, DOING BUSINESS AS SHANNON WOOD PRODUCTS, LYNWOOD N. BULLOCK, DOING BUSINESS AS LYN'S COACH WORKS, M. M. GILLILAND, DOING BUSINESS AS GILLILAND LOGGING COMPANY, AND WARD LUMBER COMPANY, A CORPORATION, INDIVIDUALLY AND UPON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. JOHN C. BROOKS, COMMISSIONER OF LABOR OF THE STATE OF NORTH CAROLINA

No. 7810SC368

(Filed 6 February 1979)

**1. Searches and Seizures § 15— standing to enjoin OSHA searches**

Only the plaintiff who had been cited and fined for refusal to permit an inspection of work areas pursuant to G.S. 95-136(a) without a search warrant had

standing to enjoin inspection pursuant to that statute, since the rights of the remaining plaintiffs have not been impinged or immediately threatened by the statute.

2. **Searches and Seizures § 1; Constitutional Law § 21— warrantless OSHA searches — unconstitutionality of statute**

The "Inspections" section of the Occupational Safety and Health Act of North Carolina, G.S. 95-136(a), violates the Fourth and Fourteenth Amendments to the United States Constitution insofar as it purports to authorize warrantless searches of business premises.

3. **Searches and Seizures § 22— administrative inspection warrant — program of inspection test — constitutionality of statute**

The provision of G.S. 15-27.2(c)(1) permitting the issuance of an administrative inspection warrant upon a showing to the magistrate that the property is to be inspected "as a part of a legally authorized program of inspection which naturally includes that property" is constitutional when the statute is interpreted as also requiring a showing that the general administrative plan for enforcement is based upon "reasonable legislative or administrative standards" and is being applied on a neutral basis as to the particular establishment to be inspected.

4. **Searches and Seizures § 22— administrative inspection warrant — insufficiency of affidavits**

An affidavit did not make a sufficient showing of probable cause required for the issuance of an administrative inspection warrant where it failed to set forth facts from which the magistrate could make an independent determination that (1) there existed a legally authorized program of inspection which naturally included the property to be inspected, (2) the general administrative plan for enforcement was based upon reasonable legislative or administrative standards, and (3) the administrative standards were being applied to plaintiff on a neutral basis.

APPEAL by plaintiffs from *Donald Smith, Judge*. Judgment entered 14 December 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 15 November 1978.

Plaintiffs filed this action as representatives of a purported class composed of all persons within the State engaged in businesses dealing with wood products. They allege that defendant Commissioner of Labor intends to inspect the non-public portions of their places of business without a search warrant pursuant to the Occupational Safety & Health Act (OSHA) of North Carolina, violating the North Carolina and United States Constitutions. They further allege that plaintiff Ward Lumber Company (Ward) has been cited and fined for refusal to permit such inspection. Plaintiffs seek to have defendant enjoined from

conducting such inspections and from citing and fining those who refuse the inspections. They also ask to have such inspections declared unconstitutional. Two attachments to the complaint, apparently communications from the North Carolina Forestry Association to its members, indicate that OSHA planned to make the wood products industry the subject of its State Emphasis Program for 1977 and 1978 because of the industry's high injury and illness rate and large number of employees.

Plaintiffs filed a motion for a preliminary injunction, attaching to it copies of the OSHA citations of Ward Lumber Company on 19 July 1977 and Ward's letter to OSHA contesting the citations. In response to an order to show cause, Lawrence Weaver, the acting director of OSHA, filed an affidavit setting out the selection criteria of the State Emphasis Program and indicating why the wood products industry met these criteria. The affidavit also stated that on 9 May 1977 an inspection was attempted at Ward Lumber Company, but the OSHA officer was refused entry. An Administrative Inspection Warrant was then obtained from a magistrate, but Ward refused to honor the warrant and permit the inspection. Weaver's affidavit said that it is the policy of the Department of Labor always to obtain such a warrant when entry for an inspection is refused. Both parties presented testimony at the hearing on the motion, and the motion was denied.

Defendant filed an answer asserting, among other defenses, that the complaint failed to state a claim upon which relief could be granted, and that he was entitled to summary judgment. The court found that the complaint failed to state a claim, and in the alternative that defendant was entitled to summary judgment. Plaintiffs appeal.

*Hugh J. Beard, Jr., for plaintiff appellants.*

*Attorney General Edmisten, by Associate Attorney George W. Lennon, for the State.*

ARNOLD, Judge.

[1] Defendant first argues that plaintiffs lack standing to bring this action, since the relief they seek is merely prospective. A party has no standing to enjoin the enforcement of a statute

unless he can show that his rights have been impinged or are immediately threatened by the statute. 7 Strong's N.C. Index 3d, Injunctions § 5.1. It is apparent here that with the exception of Ward Lumber Company no plaintiff's rights have been impinged upon by the statute, and we find that the other plaintiffs' rights are not "immediately threatened." The only indication that there may be plans to enforce the statute against them is the existence of the State Emphasis Program. Except with regard to plaintiff Ward Lumber Company the action was appropriately dismissed.

[2]  We consider the merits of this appeal as it concerns Ward Lumber Company, which has already been cited and fined for refusing to allow inspections without a warrant and with an administrative inspection warrant. Plaintiff contends that its complaint did state a claim for relief, on the ground that two North Carolina statutes are unconstitutional. The first of these, G.S. 95-136(a), is the "Inspections" section of the Occupational Safety and Health Act of North Carolina, N.C. G.S. Ch. 95, Art. 16. It allows inspections of work areas without search warrants, as follows:

> (a) In order to carry out the purposes of this Article, the Commissioner or Director, or their duly authorized agents, upon presenting appropriate credentials to the owner, operator, or agent in charge, are authorized:
>
> (1) To enter without delay, and at any reasonable time, any factory, plant, establishment, construction site, or other area, work place or environment where work is being performed by an employee of an employer; and
>
> (2) To inspect and investigate during regular working hours, and at other reasonable times, and within reasonable limits, and in a reasonable manner, any such place of employment and all pertinent conditions, processes, structures, machines, apparatus, devices, equipment, and materials therein, and to quesiton privately any such employer, owner, operator, agent or employee.

This provision is essentially identical to Sec. 8(a) of the federal Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(a), which the United States Supreme Court found unconstitutional in *Marshall v. Barlow's, Inc.*, 56 L.Ed. 2d 305 (1978).

Barlow had denied entrance to the inspector who had no search warrant, and the court said: "We hold that Barlow was entitled to a declaratory judgment that the Act is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent and to an injunction enjoining the Act's enforcement to that extent." *Id.* at 319. The State shows us no convincing reason, and we find none, why we should reach a different result in this case. Our "warrantless inspection" statute is essentially identical to the federal one which has been declared unconstitutional as violative of the Fourth Amendment. We find that G.S. 95-136(a) violates the Fourth and Fourteenth Amendments to the United States Constitution to the extent it authorizes warrantless searches, and that plaintiff is entitled to have the enforcement of the statute enjoined to that extent.

[3]　Plaintiff also asserts that G.S. 15-27.2(c)(1) is a violation of the United States and North Carolina Constitutions. The statute, providing for the issuance of administrative inspection warrants by a magistrate or clerk of court, reads as follows:

> (c) The issuing officer shall issue the warrant when he is satisfied the following conditions are met:

> > (1) The one seeking the warrant must establish under oath or affirmation that the property to be searched or inspected is to be searched or inspected as part of a legally authorized program of inspection which naturally includes that property, or that there is probable cause for believing that there is a condition, object, activity or circumstance which legally justifies such a search or inspection of that property.

As plaintiff points out, this statute creates two alternative criteria for determining whether to issue a warrant. The first, the "program of inspection test," is that the property is to be inspected "as part of a legally authorized program of inspection which naturally includes that property." The second is a probable cause test. If an inspection meets either of these tests a warrant is properly issued under the statute. Plaintiff argues that the program of inspection test does not satisfy the *Barlow's* requirement of probable cause.

The court in *Barlow's* established that the meaning of probable cause is not the same in an inspection warrant procedure as it is in the case of a search warrant in a criminal proceeding.

> Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of .a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' . . . A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources . . . would protect an employer's Fourth Amendment rights. 56 L.Ed. 2d at 316.

We find the requirement of G.S. 15-27.2(c)(1) that the property is to be inspected "as part of a legally authorized program of inspection which naturally includes that property" comports with the *Barlow's* criterion that "a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources." In light of the Supreme Court's decisions in *Camara v. Municipal Court*, 387 U.S. 523, 18 L.Ed. 2d 930, 87 S.Ct. 1727 (1967), and *Marshall v. Barlow's, Inc., supra*, we interpret the statute as also requiring a showing to the magistrate that the general administrative plan for enforcement is based upon "reasonable legislative or administrative standards." Interpreted in this way, G.S. 15-27.2(c)(1) requires a sufficient showing of probable cause, and is constitutional.

[4] We hold, in the interest of justice, that by arguing the constitutionality of G.S. 15-27.2(c)(1) the appellant has also presented for our review the sufficiency of the affidavit on which the administrative warrant was obtained. We find that the affidavit does not make a sufficient showing of the administrative probable cause which the statute requires.

Gregory S. Coulson, Director of the Enforcement Division of the North Carolina Department of Labor, in charge of OSHA inspections throughout the state, testified that "[t]he warrant secured against Ward Lumber Company is based on [our] model

affidavit . . . [which] does not describe any reason why that specific property would have violations of the acts within its premises." He described the model affidavit as stating that

> 'Blank' being the name and title of the officer, being duly sworn and examined under oath, says under oath that there is a program of inspection authorized by G.S. 95-129(3), G.S. 95-133(b)(2), and G.S. 95-136(a), which naturally includes the property owned or possessed by 'Blank', this is the owner or possessor, and described as follows: 'Blank' which precisely describes the name, location and address of the property to be inspected with this warrant.

No facts from which the issuing officer could determine whether probable cause existed were included; accordingly, this affidavit is insufficient to support the issuance of an administrative search warrant. Apparently similar affidavits were implicitly disapproved by the court in *Barlow's* at note 20, and specifically disapproved by the Seventh Circuit in a recent decision relying on *Barlow's. Weyerhaeuser Co. v. Marshall,* 452 F. Supp. 1375 (E.D. Wis. 1978).

The inclusion of the underlying facts in the affidavit is necessary to make the warrant procedure meaningful. In explaining the protections afforded by a warrant, the Supreme Court in *Barlow's* said: "The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers . . . as to when to search and whom to search. A warrant, by contrast, [provides] assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." 56 L.Ed. 2d at 317-18. These protections do not exist unless it is the *issuing officer* who makes the determination of whether the inspection is part of a "legally authorized program" based on a "general administrative plan derived from neutral sources" that meets "reasonable standards."

This conclusion is in accord with the position of our Supreme Court in *State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 752 (1972). Although *Campbell* was a criminal case, we hold that the requirements for warrant procedures set out there apply equally to the issuance of administrative inspection warrants, since the pur-

pose of a warrant in either case is to provide for a determination of probable cause by a neutral officer.

> Probable cause cannot be shown "by affidavits which are purely conclusory, stating only the affiant's . . . belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based . . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp . . . ." *U.S. v. Ventresca*, 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965). The issuing officer "must judge for himself the persuasiveness of the facts relied on by [an affiant] to show probable cause. He should not accept without question the complainant's mere conclusion. . . ." *Giordenello v. U.S.*, 357 U.S. 480, 2 L.Ed. 2d 1503, 78 S.Ct. 1245 (1958).

*Id.* at 130-31, 191 S.E. 2d at 756. *See also State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976).

We note that any administrative burden resulting from our decision today will be minimal, since it appears from the record before us that the Department of Labor has already established neutral guidelines and criteria for determining the target industries of enforcement programs and that it does check potential target industries against these criteria. The affidavit of Lawrence A. Weaver III, Acting Director of the OSHA Division of the North Carolina Department of Labor, apparently tendered to the court in response to an order to show cause, states in pertinent part:

> 5. That in order to effect a significant decrease in the number of job related injuries and illnesses, the North Carolina Department of Labor initiated in 1976 the State Emphasis Program (*SEP*) concept.
>
> \* \* \* \*
>
> 7. That in the industry candidate selection process used by the North Carolina Department of Labor, six selection criteria were established.
>
> 8. That the first criterion is SEVERITY AND TRACTABILITY OF THE PROBLEM such that State Emphasis candidate industries

should represent serious problems both in terms of the number of workers affected and the perceived incidence rates of the safety and health hazards, and that the problem is susceptible to improvement through the State Emphasis Program elements of education, consulting, reporting, and inspection.

9. That the lumber and wood products industry and the furniture industry had accident and illness rates of 12.8 and 11.1 respectively with a total employment of approximately 93,000 people in 1975.

10. That the overall accident and illness rate for the private employment sector in North Carolina was 7.1 and the approximate total employment was 1,680,400 people in 1975.

11. That, due to the high accident and illness rates of lumber and wood products industry and the furniture industry involving approximately 5.6 percent of the total private sector employment of North Carolina, criterion one is met.

12. That the second criterion is an EXISTENCE OF STABLE ENFORCIBLE STANDARDS which are clear, complete and susceptible to inspection.

13. That criterion two is met as there are at least four specific areas of the Occupational Safety and Health Standards, such as 29 CFR 1910.213, 29 CFR 1910.24, 29 CFR 1910.265, and 29 CFR 1910.266, which relate to the lumber and wood products industry and the furniture industry.

14. That the third criterion is GEOGRAPHICAL DISTRIBUTION.

15. That criterion three is met as the lumber and wood products industry and furniture industry are geographically distributed throughout the State of North Carolina.

16. That the fourth criterion in [sic] POTENTIAL EMPLOYER, EMPLOYEE AND PUBLIC SUPPORT which is important, but not a controlling consideration.

17. That the fourth criterion is met as at least ten educational seminars have been held throughout the state with attendance by over 500 employers and employees of the logging industry and that the North Carolina Department of

Labor has historically maintained good relations with and received support from the furniture industry.

18. That the fifth criterion is the existence of OSHA TECHNICAL QUALIFICATIONS through special State Emphasis Program training and a selection area in which OSHA already has qualified staff and equipment.

19. That the fifth criterion is met as the members of all sections of the North Carolina Department of Labor, OSHA Division, have received special training in the selected industries both prior to and after the beginning of the State Emphasis Program and that appropriate necessary staff support and equipment is already in existence.

20. That the sixth criterion is USEFULNESS AS A PROTOTYPE of the selected industry.

21. That by meeting the first five criteria it is expected that the first selected emphasis industry will serve as a useful prototype for future State Emphasis Programs.

22. That the average number of alleged OSHA violations expected to be observed during an inspection of a plant within the selected industry is eight.

23. That the accident and illness incidence rates for the lumber and wood products industry and furniture industry are 12.8 and 11.1 respectively.

24. That these are among the highest in the State of North Carolina.

It merely remains for an agency seeking an administrative search warrant to provide such factual information in the supporting affidavit, so that the magistrate, or clerk, may make an independent determination that the requisite probable cause exists for the general administrative plan for enforcement.

[3] We find that it is further necessary for the agency to make a showing to the magistrate, or clerk, that the general administrative plan for enforcement is being applied on a neutral basis as to the particular establishment to be inspected. *Camara v. Municipal Court, supra; Weyerhaeuser Co. v. Marshall, supra.* This assures that the plan will not be discriminatorily applied against a particular establishment for harassment or deception.

[4] In the case *sub judice*, there was no showing from which a magistrate could have independently determined (1) that there existed a legally authorized program of inspection which naturally included the property, (2) that the general administrative plan for enforcement was based upon reasonable legislative or administrative standards, and (3) that the administrative standards were being applied to plaintiff on a neutral basis. Thus the warrant was improperly granted.

Having determined that the warrant procedure of G.S. 15-27.2(c)(1) was not complied with, we reverse, and as a result we find it unnecessary to reach plaintiff's contention that the statute violates Art. I, Sec. 20 of the North Carolina Constitution. *But see Brooks v. Taylor Tobacco Enterprises, Inc.*, 39 N.C. App. 529 (No. 7813SC691, 6 February 1978).

Plaintiff Ward Lumber Company was entitled to declaratory judgment that G.S. 95-136(a) is unconstitutional to the extent that it authorizes warrantless searches. Defendant was not entitled to summary judgment. In accordance with this opinion judgment of the trial court is

Reversed.

Judges HEDRICK and VAUGHN concur.