2005 ND 32

**Robin PRATT, Plaintiff and Appellant**

v.

**Richard ALTENDORF d/b/a Northwood Aero Spray and/or Northwood Aero Service, Defendant and Appellee.**

No. 20040163.

Supreme Court of North Dakota.

Feb. 16, 2005.

Adam Wade Hamm (argued) and David J. Hauff (on brief), Anderson & Bottrell, Fargo, ND, for plaintiff and appellant.

E. Thomas Conmy III (argued), Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   Robin Pratt appealed from a summary judgment dismissing his claim for damages against Richard Altendorf for breach of a contract to provide aerial spraying of fungicide on Pratt's growing crops.  We hold the notification requirements under N.D.C.C. § 4–35–21.1(1) do not apply to Pratt's action against Altendorf, and we reverse and remand for a trial on the merits.

I

[¶ 2]   Altendorf, doing business as Northwood Aero Spray or Northwood Aero Service, has a crop spraying business in Grand Forks.  In the spring of 2000, Pratt, a Northwood farmer, contracted with Altendorf to spray fungicide on his growing crops.  Altendorf was to spray a fungicide called Folicur to prevent scab and foliar disease, which can infect crops and result in a lower crop yield.  Altendorf performed the spraying services, but after the crops were harvested Pratt sued Altendorf for breach of contract, alleging that Altendorf sprayed the crops too early in their growing cycle for the fungicide to be completely effective, thereby resulting in a reduced crop yield.

[¶ 3]   Altendorf moved for and was granted a summary judgment dismissing the action on the ground that Pratt did not comply with the notification reporting requirements under N.D.C.C. § 4–35–21.1(1) prior to filing his action against Altendorf.  The district court concluded the notification statute applied and Pratt had failed to comply with it.  However, the court also concluded that under N.D.C.C. § 4–35–21.1(3), the 60–day time limit for Pratt to serve notice upon Altendorf prior to commencing his action did not apply, because Altendorf had failed to inform Pratt of the statutory notice requirements.  The court, therefore, dismissed Pratt's action without prejudice.  On appeal, Pratt argues the statutory notice requirement does not apply and the trial court erred in dismissing the action.

II

[¶ 4]   The right to appeal is a jurisdictional matter which this Court may consider on its own.  *Frontier Enterprises, LLP v. DW Enterprises, LLP*, 2004 ND 131, ¶ 3, 682 N.W.2d 746.  The right of appeal in North Dakota is governed by statute.  *State v. Moore*, 2003 ND 83, ¶ 4, 662 N.W.2d 263, *cert. denied*, 540 U.S. 906, 124 S.Ct. 268, 157 L.Ed.2d 192.  Ordinarily, a dismissal without prejudice is not appealable, because either side may start another action.  *Winer v. Penny Enter-*

*prises, Inc.*, 2004 ND 21, ¶ 6, 674 N.W.2d 9. A dismissal without prejudice, however, may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum. *Id.*

[¶ 5] The judgment from which Pratt has appealed dismissed his action for damages against Altendorf without prejudice to his filing another complaint. Pratt's claim is based on breach of contract, and actions arising in contract are governed by a six-year statute of limitations. N.D.C.C. § 28–01–16(1). The alleged breach of contract occurred in the spring of 2000. Therefore, Pratt would not be barred by the statute of limitations from bringing a subsequent action.

[¶ 6] If we assume, for purposes of determining whether Pratt has a right to appeal from the summary judgment, the trial court is correct that the notification requirements under N.D.C.C. § 4–35–21.1 apply, the dismissal would have the practical effect of terminating the litigation. We reach that conclusion because subsection 2 of the statute provides that when damages are alleged to have occurred to growing crops, a notification report "must be filed prior to the time fifty percent of the field is harvested." If the statute applies, Pratt would have had to notify Altendorf before the crop was more than 50 percent harvested, even though Altendorf did not inform Pratt of the statute's notice requirements. *See* N.D.C.C. § 4–35–21.1(3). The crop is fully harvested, and Pratt did not comply with the notice requirement. Because the summary judgment dismissing this action would have the practical effect of terminating the litigation, we conclude the judgment is final and appealable.

[¶ 7] The district court had subject matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

III

[¶ 8] Pratt contends the district court should not have granted Altendorf's motion for summary judgment dismissing Pratt's action for failure to provide notice to Altendorf prior to commencing the action, because the statutory notice requirement does not apply to this case.

[¶ 9] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for properly disposing of a lawsuit without trial if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Kondrad ex rel. McPhail v. Bismarck Park Dist.*, 2003 ND 4, ¶ 4, 655 N.W.2d 411. Whether the trial court properly granted summary judgment is a question of law and is reviewed de novo. *Id.*

[¶ 10] Section 4–35–21.1(1), N.D.C.C., provides:

No civil action may be commenced arising out of the application of any pesticide by any applicator inflicting damage on property unless, within sixty days from the date the claimant knew or reasonably should have known of the damage:

a. The claimant has served the applicator allegedly responsible for damage with a verified report of loss;

b. If the claimant is someone other than the person employing the applicator alleged to be responsible for the damage, the claimant has served the person who employed the applicator

allegedly responsible for the damage with a verified report of loss; and

c. The claimant has mailed or delivered to the commissioner of agriculture a verified report of loss together with proof of service of the report required by subdivision a and the report required by subdivision b, if applicable.

[¶ 11] Pratt argues the statutory notice requirement does not apply, because his action against Altendorf does not arise "out of the application of any pesticide by any applicator inflicting damage." Pratt argues that he is not claiming Altendorf inflicted damage to his crops or any other property by the application of the pesticide. Rather, he is claiming that Altendorf breached his contract by not timely spraying when the fungicide application would have produced the desired result.

[¶ 12] Interpretation of a statute is a question of law fully reviewable on appeal. *State ex rel. Heitkamp v. Family Life Services, Inc.*, 2000 ND 166, ¶ 7, 616 N.W.2d 826. Our primary objective in construing a statute is to ascertain the intent of the legislature. N.D.C.C. §§ 1-02-02 and 1-02-03. We determine intent by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. § 1-02-02. Although the courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. N.D.C.C. §§ 1-02-05, 1-02-39. Words in a statute are to be understood in their ordinary sense. N.D.C.C. § 1-02-02.

[¶ 13] Section 4-35-21.1(1), N.D.C.C., requires a report of loss prior to commencing an action against the applicator of pesticides "inflicting damage on property." The term "inflict" is defined in *Webster's New World Dictionary* 722 (2nd Coll. Ed. 1982) to mean:

to strike or beat against ... to give or cause (pain, wounds, blows, etc.) by or as by striking; cause to be borne ... to impose (a punishment, disagreeable task, etc. *on* or *upon*)

The *Random House Dictionary of the English Language* (2nd ed. 1987) defines "inflict" to mean:

to impose as something that must be borne or suffered ... to deal or deliver, as a blow

Using its general and ordinary meaning, the term inflicting is a word of action, such as striking, beating, or imposing. Consequently, a reasonable interpretation of the statutory language, "application of any pesticide ... inflicting damage on property," is that it applies to an application of chemicals affirmatively imposing harmful results upon a property. In the context of crop dusting, for "inflicting damage on property," liability of the applicator generally arises in tort, not contract. *See* Annot., *Liability for Injury Caused by Spraying or Dusting of Crops*, 37 A.L.R.3d 833, 839 (1971).

[¶ 14] Liability for the application of herbicide or pesticides inflicting damage on property, usually by drift of the chemical resulting in severe damage or destruction of the property upon which it lands, is based upon principles of tort, such as negligence, trespass, and strict liability. *See, e.g., Langan v. Valicopters, Inc.*, 88 Wash.2d 855, 567 P.2d 218, 220 (1977); *see also Foust v. Estate of Walters*, 21 S.W.3d 495, 507–08 (Tex.App.2000) (neighbor who hired aerial application of herbicide that inflicted damage on nearby crops was liable under tort principles for decision to apply the herbicide when conditions favored drift); *Leonard v. Abbott*, 357 S.W.2d 778, 782 (Tex.Civ.App.1962), *rev'd on other grounds*, 366 S.W.2d 925 (1963)

(aerial spraying of chemical defoliants, insecticides, and herbicides are activities having such potential for inflicting injury as to be considered inherently dangerous); *Loe v. Lenhardt*, 227 Or. 242, 362 P.2d 312, 314 (1961) (chemical application that drifted onto neighbors' land was "trespassory invasion of their rights" inflicting damage on the property); *Alexander v. Seaboard Air Line R. Co.*, 221 S.C. 477, 71 S.E.2d 299, 302 (1952) (liability imposed on tort principles for injury inflicted upon cotton crop by chemical being used to kill weeds on nearby right-of-way). Also, in other contexts the term "inflicting damage" has meant causing harm by actions resulting in tort liability, not breach of contract. *Koos v. Roth*, 293 Or. 670, 652 P.2d 1255, 1268 (1982) (farmer burning field from which fire escaped upon neighbor's property thereby inflicting damage to it was strictly liable for the damages caused); *Kell v. Appalachian Power Co.*, 170 W.Va. 14, 289 S.E.2d 450, 454 (W.V.1982) (power company held strictly liable for use of toxic herbicides inflicting damage upon property by application of herbicide in clearing trees, branches, and other obstructions from nearby right-of-way).

[¶ 15] Our statute requires the giving of notice as a prerequisite to filing an action arising out of the application of pesticide "inflicting damage" on property. Used in its general sense, as indicated by the foregoing authorities, "inflicting damage on property" by the application of pesticide connotes tortious action resulting in harm or destruction to property not intended to be adversely impacted by the chemical application. There is no allegation by Pratt that Altendorf's application of the fungicide was a tortious act inflicting damage on Pratt's crops. Rather, Pratt contends Altendorf's spraying services constituted a breach of his contract by providing the services "prior to being directed to by [Pratt] and prior to those fields being ready for the application of the fungicide," thereby rendering the spraying less effectual and resulting in a reduced crop yield. The alleged harm was not caused by the "application . . . inflicting damage" but rather by the untimely or premature provision of the contracted services. The statutory notification requirement, by its clear language, does not apply to an action of this type. Construing the words used in the statute in their ordinary sense, we conclude the notice reporting requirements apply only to actions arising out of the "application" of pesticides by an applicator "inflicting damage on property." Pratt's action against Altendorf is based upon contract principles, not tort, and does not arise out of "the application [of the fungicide by Altendorf] inflicting damage on property." Rather, Pratt's claim is based on Altendorf's failure to timely perform his contractual agreement to spray Pratt's crops.

### IV

[¶ 16] We conclude Pratt's lawsuit does not fall within those actions for which the claimant must give statutory notice under N.D.C.C. § 4–35–21.1(1) prior to filing the action. Consequently, the court erred in dismissing the action for Pratt's failure to provide notice. We, therefore, reverse the summary judgment dismissing Pratt's action against Altendorf and remand for further proceedings on the merits.

[¶ 17] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.