# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 166

Newfield Exploration Company, Newfield
Production Company, and Newfield RMI LLC,  Plaintiffs and Appellees

v.

State of North Dakota, ex rel. the North
Dakota Board of University and School Lands,
and the Office of the Commissioner of
University and School Lands, a/k/a the North
Dakota Department of Trust Lands,  Defendants and Appellants

## No. 20220022

Appeal from the District Court of McKenzie County, Northwest Judicial
District, the Honorable Robin A. Schmidt, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Michelle P. Scheffler (argued), Garrett S. Martin (appeared), and Ryan P. Pitts
(appeared), Houston, TX, and Lawrence Bender (appeared), Bismarck, ND, for
plaintiffs and appellees.

David P. Garner, Assistant Attorney General, Bismarck, ND, for defendants
and appellants.

# Newfield Exploration Company, et al. v. State, et al.
## No. 20220022

**Crothers, Justice.**

[¶1]   The State of North Dakota, ex rel. the North Dakota Board of University and School Lands, and the Office of the Commissioner of University and School Lands, a/k/a the North Dakota Department of Trust Lands appeals from a judgment dismissing its claim against Newfield Exploration Company relating to the underpayment of gas royalties. The State claims Newfield's underpayment of royalties violated N.D.C.C. § 47-16-39.1, which obligates a well operator to pay royalties. We reverse and remand.

I

[¶2]   Newfield operates numerous oil and gas wells on property that includes State-owned minerals and leases. In 2016, the State audited certain wells operated by Newfield. In January 2017, the State informed Newfield it underpaid gas royalties because the "royalty payments were being calculated on gross proceeds less deductions." The State claimed that under its standard lease, "deductions are not allowed to be subtracted from gross proceeds in the calculation of . . . royalty payments." The letter to Newfield stated applicable interest and penalties may be assessed on late royalty payments under N.D.C.C. § 47-16-39.1 and the Board's oil and gas lease rules. In response, Newfield denied it underpaid gas royalties to the State.

[¶3]   In March 2018, Newfield sued the State seeking court confirmation that it properly calculated royalties under the State's leases based on the proceeds Newfield received for selling the gas. Newfield sought a judgment declaring that royalty payments to the State were properly calculated under the terms of the leases. The State counterclaimed, alleging Newfield underpaid gas royalties by improperly deducting expenses. The State alleged a breach of contract, claiming it was entitled to penalties and interest under its administrative rules and N.D.C.C. § 47-16-39.1. The State also sought an

accounting from Newfield. Newfield denied the State's allegations and raised the affirmative defenses of waiver, estoppel, and laches.

[¶4] Both parties moved for summary judgment on the "interpretation of the gas royalty provisions of the Newfield Leases entered into between [Newfield] and [the State] on certain property." Newfield claimed the lease language allowed it to calculate the State's gas royalty as a percentage of the proceeds Newfield received from its third-party purchaser. The State asserted the proceeds Newfield received from its third-party purchaser were reduced to account for expenses incurred by the purchaser to make the gas marketable. The State argued Newfield's deduction for processing expenses and resulting reduction of the royalty was contrary to the lease. The district court granted Newfield's motion, concluding Newfield properly calculated the State's gas royalty under the lease. The court entered a judgment dismissing the State's counterclaim.

[¶5] This Court reversed, concluding, "Gross proceeds from which the royalty payments under the leases are calculated may not be reduced by an amount that either directly or indirectly accounts for post-production costs incurred to make the gas marketable." *Newfield Expl. Co. v. State ex rel. N. Dakota Bd. of Univ. & Sch. Lands*, 2019 ND 193, ¶ 12, 931 N.W.2d 478. We held the calculation of the State's gas royalty "based on an amount that has been reduced to account for expenses incurred to make the gas marketable, even though the cost to make the gas marketable only indirectly benefits Newfield, is contrary to the leases." *Id.* at ¶ 11. We reversed the district court's judgment in favor of Newfield and remanded for additional proceedings. *Id.* at ¶ 12.

[¶6] On remand, both parties moved for summary judgment. The State argued it was entitled to the relief sought in its counterclaim based on this Court's decision in *Newfield*, 2019 ND 193. Newfield asserted that if the State succeeded on its claim to recover unpaid royalties, it may only recover from production occurring on or after August 1, 2013. In its order for partial summary judgment, the district court dismissed the State's claim for an

accounting and concluded August 1, 2013 was the date from which the State could seek damages for unpaid royalties.

[¶7]  At an October 2021 bench trial the State submitted evidence identifying the leases covered by Newfield's wells. The State also introduced royalty statements and a summary showing the State's calculation of Newfield's underpayment of royalties, along with penalties and interest. Newfield submitted evidence related to estoppel and laches. The district court found the State failed to establish a breach of contract because it could not prove a contract, lease or other obligation existed between the parties. The court entered judgment dismissing the State's counterclaim against Newfield. The State timely appeals.

## II

[¶8]  Our standard of review in an appeal from a bench trial is well established:

> "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. Findings of the trial court are presumptively correct."

*Sproule v. Johnson*, 2022 ND 51, ¶ 9, 971 N.W.2d 854.

## III

[¶9]  The State argues the district court erred by dismissing its counterclaim against Newfield based on a failure to introduce the leases between the parties. The State argues Newfield, as a well operator, has a statutory obligation to pay royalties according to the State's leases.

3

[¶10] As an initial matter, we address Newfield's characterization of the parties' relationship. As mentioned, Newfield operates several gas producing wells on property that includes minerals leased by the State. However, throughout much of the litigation, Newfield also portrayed itself as a lessee of the State. In its March 2018 complaint, Newfield stated, "The oil and gas lease agreements entered into between the [State] and Newfield (collectively, the 'Newfield Leases') were drafted by the [State] based on the Form Lease." Newfield's August 2018 summary judgment brief stated as an undisputed fact that "Newfield has an interest" in the State's "oil and gas lease agreements." Newfield used its self-defined term "Newfield Leases" throughout its brief.

[¶11] After prevailing on summary judgment, the district court ordered Newfield to prepare a judgment, which provided, "The claims asserted in Newfield's Complaint concern a number of oil and gas leases currently in effect between Newfield and Defendants, the terms of which are derived from a standard lease form utilized by Defendants." In the parties' first appeal, this Court said, "Newfield has entered into leases with the State. . . ." *Newfield*, 2019 ND 193, ¶ 2. On remand, Newfield's July 2021 summary judgment brief reiterated, "It is undisputed that [Newfield] is lessee and the [State] is lessor . . . under a number of oil and gas leases."

[¶12] Before trial on the State's breach of contract counterclaim on remand, Newfield changed course. Despite consistently characterizing itself as a lessee of the State, Newfield stated in its pretrial statement, "the Court must determine if the State has proven that Newfield and the State are parties to any executed 1979 form leases and that the wells subject to those leases have produced natural gas in the relevant years." Newfield admitted it pays royalties to the State, but only as an operator under a spacing unit: "Newfield pays the State royalties on leases between third parties and the State on wells that Newfield merely operates. Such third-party leases belong to acreage pooled under a 'Spacing Unit' and for which Newfield serves as operator." At trial, Newfield's Director of Revenue testified Newfield pays the State royalties as a well operator.

4

[¶13] The district court agreed with Newfield's argument that the State must prove the existence of contracts that Newfield breached. In dismissing the State's claim, the court concluded, "This court is not able to assume the existence of a contract. Nor is this court able to assume a legal obligation if the State does not provide one to the court."

[¶14] Under N.D.C.C. § 9-01-05, "[a]n obligation arises from: (1) [t]he contract of the parties; or (2) [t]he operation of law." "An obligation arising from operation of law may be enforced in the manner provided by law or by civil action or proceeding." *Id.*

[¶15] The State titled one of its counterclaims as "Breach of Contract." The substance of the claim relates to Newfield's alleged underpayment of royalties on the gas produced from the Newfield operated wells. In addition to the breach of contract label, the claim alleged the State was entitled to interest and penalties under N.D.C.C. § 47-16-39.1 and N.D. Admin. Code § 85-06-06-10 as a result of Newfield's underpayment of royalties.

[¶16] Section 47-16-39.1,[1] N.D.C.C., requires a lessee or well operator to pay royalties under an oil and gas lease. If an operator fails to pay royalties to a mineral owner, the operator "shall pay interest on the unpaid royalties." *Id.* The statute requires an operator to pay royalties to a mineral interest owner whether the interest is leased or unleased. *Id.* An action to enforce an operator's violation of N.D.C.C. § 47-16-39.1 must be brought in the district court for the county where the well is located.

---

[1] Section 47-16-39.1, N.D.C.C., was amended August 1, 2021. The obligation to pay the State royalties was moved from N.D.C.C. § 47-16-39.1 to N.D.C.C. § 15-05-10. 2021 N.D. Sess. Laws ch. 119, §§ 1-2. For purposes of this appeal, we refer to the earlier version of N.D.C.C. § 47-16-39.1. *See White v. Altru Health Sys.*, 2008 ND 48, ¶¶ 10-11, 746 N.W.2d 173 (stating the version of a statute in effect on the date the cause of action accrued applies, because statutes generally do not apply retroactively).

[¶17] The district court concluded the State did not establish a legal obligation owed by Newfield. However, the State pled N.D.C.C. § 47-16-39.1 in its counterclaim, which the court recognized at trial. The State brought the action in the county where Newfield operated its wells as required by N.D.C.C. § 47-16-39.1. *See* N.D.C.C. § 9-01-05 (providing a legal obligation may be enforced in the manner provided by law). Because the State satisfied both the pleading and the proof requirements of N.D.C.C. § 47-16-39.1, the district court erred in concluding the State did not prove Newfield owed it a legal obligation to pay additional royalties. Rather, as the well operator, Newfield owed the State an obligation under N.D.C.C. § 47-16-39.1 to pay royalties according to the State's leases. The court failed to recognize Newfield's legal obligations as a well operator under N.D.C.C. § 47-16-39.1.

[¶18] In *Newfield*, 2019 ND 193, ¶ 11, we held Newfield's calculation of the State's gas royalty was "contrary to the leases." The parties acknowledged the State has been using the same form lease with the same royalty provisions since 1979. The district court's first judgment, prepared by Newfield, stated the claims involved in the action "concern a number of oil and gas leases" between the parties, "*the terms of which are derived from a standard lease form utilized by [the State].*" (Emphasis added). Because the leases' royalty provisions are the same, the trial on remand should have focused on the State's damages and Newfield's affirmative defenses, not whether the State could prove a breach of each lease involved in this action.

[¶19] At trial, the State introduced evidence of its damages from August 1, 2013 through testimony and by documents, including royalty statements, a list of Newfield wells and the corresponding State leases covered by each well, and a summary showing deductions, interest and penalties. Newfield presented evidence on its defenses of estoppel and laches. Although the parties presented evidence on their damages and defenses, the district court did not make any findings on these issues because it ruled the State failed to establish a contract existed between the parties. The court erred in dismissing the State's counterclaim; therefore, we reverse and remand for findings related to the State's damages and Newfield's affirmative defenses.

## IV

[¶20] The parties' remaining arguments have been considered and are either without merit or not necessary to our decision. The judgment is reversed and remanded.

[¶21]  Jon J. Jensen, C.J.
　　　Gerald W. VandeWalle
　　　Daniel J. Crothers
　　　Lisa Fair McEvers
　　　Jerod E. Tufte